IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELANIE GARCIA, individually and as parent and
next friend of ISAIAH GARCIA, a minor,

           Plaintiffs,

vs.                                                            No. CIV-06-0631 JC/WDS

CITY OF ESPAÑOLA; ESPAÑOLA MUNICIPAL
POLICE DEPARTMENT; RICHARD GUILLEN,
individually and in his official capacity as Chief of
the Española Municipal Police Department;
CLAUDETTE CHAVEZ, Personal Representative
of the Estate of MANUEL TRUJILLO, deceased,
individually and in his official capacity as a Lieutenant
of the Española Municipal Police Department;
CHRISTIAN LOPEZ, individually and in his official
capacity as a Detective of the Española Municipal
Police Department; and Chris Valdez, individually,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Defendant Valdez's Motion to Dismiss Plaintiffs' Complaint*, filed September 25, 2006 (*Doc. 19*) and *The Española Defendants' Motion to Dismiss Plaintiffs' Complaint*, filed November 28, 2006 (*Doc. 39*).  The Court, having considered the motions, the parties' briefs, Plaintiffs' Complaint, the relevant authority, and being otherwise fully advised, finds both motions well-taken and they are granted.

**I.**     **Background**

This case arises in the aftermath of a disturbing incident.  On the night of July 12, 2004, Plaintiff Melanie Garcia and her 13 year old son, Isaiah Garcia ("Isaiah"), were home alone when an unidentified man broke into their house, bound Isaiah and locked him in a laundry room

while he raped and otherwise assaulted Ms. Garcia multiple times. Compl. at ¶¶ 12-16. While struggling with her intruder, Ms. Garcia managed to dial 911 from her cellular phone and scream for help before the phone was knocked to the floor. Following the assaults on Ms. Garcia, the perpetrator ransacked the house, stole cash and cellular phones, and drove away in Ms. Garcia's rented car. *Id.* at ¶ 17. When Ms. Garcia unbound herself, she then unbound Isaiah and sent him next door to call 911 while she got dressed. Some time later, paramedics and officers from the Española Police Department ("EPD") arrived at the Garcia home and Ms. Garcia was transported to the Española Valley Hospital. *Id.* at ¶ 19.

Defendant Lopez was the officer assigned to initiate the investigation at the hospital. Lopez spoke with Ms. Garcia after she had received narcotic pain medication. Ms. Garcia described her rapist's wedding ring and advised Lopez that her rapist had used his own condoms when raping her. Lopez also interviewed Isaiah, who described his assailant's shoes and gloves. *Id.* at ¶¶ 22.

Ms. Garcia was then transported to St. Vincent's Hospital for additional post-rape examination and treatment. Lopez went to the Garcias' home to continue his investigation. He was joined at the home by Defendant Trujillo. Lopez and Trujillo retrieved evidence and took photographs. When Ms. Garcia returned home several days later, she found a used, partially-burned condom on a stove burner. The object had apparently been overlooked by Lopez and Trujillo. Ms Garcia called the evidence to the attention of EPD and Trujillo returned to retrieve it. *Id.* at ¶¶ 22- 24.

Within a week of the incident, Defendants Trujillo and Lopez requested that Ms. Garcia and Isaiah come into the EPD in relation to the investigation. At that time, Defendant Trujillo told Ms. Garcia not to be offended, but that the officers were concerned not with her rape but

with what the assailant had done to Isaiah. *Id.* at ¶ 25.

At some point, due to the unresponsiveness of EPD and apparent lack of progress in the investigation of the crime, Garcia contacted the New Mexico State Police ("NMSP") in Santa Fe and gave a recorded statement to an NMSP officer requesting that the NMSP in Española take over the investigation. Plaintiffs' Complaint states that "[Ms. Garcia] called Defendant Valdez of the NMSP in Española to ask if the Española NMSP would take over her case. Defendant Valdez told her that the NMSP would not take over her case, and further advised her that he had heard through the grapevine that she was 'very aggressive.' Under the circumstances, Ms. Garcia decided not to pursue the matter with NMSP in Española." *Id.* at ¶ 31.

To date, no person has been apprehended in relation to the crimes committed upon Ms. Garcia and her minor son. Ms. Garcia complains that the EPD and other Defendants failed to offer her a rape counselor to accompany her to the hospital on the night of the incident; failed to return her numerous phone calls related to the investigation; failed to keep her informed of the status of the investigation; failed to properly investigate the case; and told her that they "did not really care about what happened to her," but were more concerned with what had happened to Isaiah. *Id.* at ¶¶ 21-26. Ms. Garcia defines her injuries as "separate and exacerbated emotional injuries due to the discriminatory, demeaning, dismissive, blaming treatment of her by the EPD Defendants and Defendant Valdez" and states that both she and Isaiah "have suffered separate and exacerbated emotional injuries due to the EPD Defendant's failure to reasonably investigate their assaults." *Id.* at ¶¶ 38-39.

Ms. Garcia brings this suit against the City of Española, the EPD, Richard Guillen, Manuel Trujillo (by and through Claudette Chavez as personal representative of the estate of Manuel Trujillo, now deceased) and Christian Lopez, in their official and individual capacities,

3

and Chris Valdez in his individual capacity, invoking 42 U.S.C. § 1983 and alleging violation of her civil rights (Count I); against the City of Española, EPD, Richard Guillen, Manuel Trujillo, Christian Lopez, and Chris Valdez on behalf of herself and Isaiah and alleging violation of the New Mexico Constitution (Count II); and against City of Española, EPD, Richard Guillen, Manuel Trujillo, Christian Lopez and Chris Valdez alleging Breach of Statutory Duty to Investigate (Count III).

Defendant Valdez seeks dismissal of Plaintiffs' complaint against him based upon qualified immunity and failure to state a claim under Rule 12(b)(6). *See Docs*. 19,20. The remaining Defendants (collectively "Española Defendants") also move for dismissal on grounds of immunity and pursuant to Rule 12(b)(6). *See Doc*. 39.

## II.   Legal Standard

The court's function when entertaining a motion to dismiss pursuant to Rule 12(b)(6) "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v . Head Start, Inc*. 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## III.   Discussion

### A.   Qualified Immunity

In civil rights actions seeking damages from governmental officials, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a defendant asserts the defense of qualified immunity, a heavy two-part burden shifts to the plaintiff to overcome the asserted immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir.1995), *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). To discharge this two-part burden, a plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. Second, she must also show that the right at issue was clearly established at the time of the unlawful conduct such that a reasonable law enforcement officer would have known that the challenged conduct was illegal. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In order for a law to be regarded as clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Albright*, 51 F.3d at 1535 (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). If the plaintiff fails to satisfy either part of the two-part *Saucier* analysis, the court must grant the defendant qualified immunity.

### B.  Defendants Valdez, Guillen, Trujillo and Lopez Enjoy Qualified Immunity From Plaintiffs' Individual Capacity Section 1983 Claims Against Them

First, the facts alleged as they relate to Defendant Valdez, sued in his individual capacity, are markedly lean. Ms. Garcia contends that a single conversation she had with Valdez, in which he declined to take over the investigation and subsequently made a comment indicating that he understood her to be "very aggressive," is sufficient to create a reasonable inference of intentional discrimination against her based on her female gender in violation of her equal

5

protection rights under the United States and New Mexico Constitutions.  Assuming it could be reasonably inferred from the exchange that Valdez refused to take over the investigation *because* he understood Ms. Garcia to be aggressive, a significant presumption, extending that inference so far as to further conclude that "aggressive" is synonymous with "female" would, as Valdez points out, enter the realm of rank speculation.  *See Doc*. 35 at 2.  In fact, the purely speculative nature of the claims against Valdez is most apparent in Ms. Garcia's own Response to Valdez' Motion, in which she states, "all of these facts give rise to the reasonable inferences that Ms. Garcia was being talked about in Española, New Mexico and, further, that *there could have even have been negative talk about her* between officers of the EPD and the NMSP.  In this context, it is reasonable to infer that Defendant Valdez's disparaging remark regarding her 'aggressiveness' arose from discriminatory animus and that this was the basis of his refusal to extend police services to her."  Doc. 29 at 4-5 (emphasis added).

The Court finds, instead, that no reasonable inference of gender-based discriminatory animus can be drawn from Valdez' use of the term "aggressive."  In short, Ms. Garcia's claims for equal protection violation against Valdez, viewed in the light most favorable to her, are altogether conclusory and lacking in factual basis.  Ms. Garcia's attempt to salvage these claims by incorporating the factual allegations she makes against the Española Defendants also proves unavailing.  Absent a stated claim for constitutional violation, Plaintiffs' claims against Defendant Valdez fail part one of the *Saucier* analysis and Valdez is entitled to qualified immunity.  Accordingly, Plaintiffs' claims under Section 1983 against Officer Valdez are dismissed.

Ms. Garcia also claims that Española Defendants violated her right to equal protection under the United States Constitution by failing to investigate her sexual assault in a non-

discriminatory manner. Compl. at ¶¶ 52-53. To state a claim for equal protection violation, Plaintiffs must show that they were treated differently from others similarly situated. *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). The equal protection clause is triggered when the government "treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853. 859 (10th Cir. 1991). Ms. Garcia has failed to make this threshold showing, for the basis of Ms. Garcia's gender-based equal protection claims constitute legal conclusions requiring inferences that cannot be reasonably drawn from the few facts she has alleged. *See Jennings v. Stillwater*, 383 F.3d 1199 (10th Cir. 2004). Nowhere does Ms. Garcia identify facts pertaining to anyone who was treated differently in regard to the zeal, competence or compassion exhibited by these Defendants during an investigation. Mindful that the rules require only "notice pleading," *see Conley v. Gibson*, 355 U.S. 41, 47 (1957), the Court finds that the bare allegations of intentional malice against Española Defendants represent conclusory allegations where well-pleaded facts are required. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Accordingly, Española Defendants are entitled to qualified immunity on Plaintiffs' claims for equal protection.

    **C.**    **Plaintiffs' Official Capacity Section 1983 Claims Cannot Survive Motion to Dismiss Pursuant to Rule 12(b)(6)**

The same reasons for granting qualified immunity to individual Defendants in Section B, *supra*, form the basis for dismissal of the equal protection claims against the municipal Defendants under Rule 12(b)(6). As Española Defendants identify, Plaintiffs' Complaint fails to state a viable equal protection claim against anyone, as the Complaint merely makes wholly unsupported, conclusory allegations of discrimination based on sex. Accordingly, Count I of Plaintiffs' Complaint must be dismissed against Defendants Guillen, Trujillo, and Lopez in their

7

official capacities, as well as against EPD and the City of Española.[1]

### D.  Plaintiffs' Claims for Violations of New Mexico Constitution, Article II, § 4 are not Viable

Here, Plaintiffs allege that all Defendants violated Isaiah's and her "rights under the New Mexico Constitution to enjoy their lives and to seek and obtain safety and happiness."  Compl. at ¶ 48.  The Court construes this claim as invoking the natural, inherent rights such as "the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness."  N.M. Const. art. II, § 4.  Yet it is undisputed that New Mexico courts have consistently declined to find a waiver of sovereign immunity under the New Mexico Tort Claims Act (NMTCA) based upon deprivation of rights guaranteed by Article II, Section 4.  *See, e.g., Blea v. City of Espanola*, 117 N.M. 212, 220, 870 P.2d 755, 758 (Ct. App. 1994); *Lucero v. Salazar*, 117 N.M. 803, 877 P.2d 1106 (Ct. App. 1994).   In fact, Plaintiffs concede as much.  *See* Doc. 45 at 17, 19 (Plaintiffs acknowledge that "new Mexico has failed to recognize a waiver of immunity under the Tort Claims Act for alleged deprivations of these rights" and that "no New Mexico case" supports their claim here). Accordingly, this claim must be dismissed.

### E.  Plaintiffs' Claims for Breach of Statutory Duty to Investigate Must Fail

Here, Ms. Garcia asserts that all Defendants had a statutory duty to investigate the crimes and were derelict in that duty.  As this claim pertains to Officer Valdez, the allegation must be that he breached a duty to investigate the crimes altogether, whereas the claims against Española Defendants apparently challenge the sufficiency of the investigation.

---

[1] For the same reasons, Plaintiffs' equal protection claim under the New Mexico Constitution fail.

Plaintiffs cite no direct authority, and the Court has uncovered none, standing for the proposition that Plaintiffs enjoy a federal right, constitutional or otherwise, to control or direct the course of a criminal investigation.  New Mexico law recognizes a statutory duty to investigate pursuant to NMSA 1978 § 29-1-1 (1979), which creates a duty on the part of law enforcement officers to (1) investigate crimes; (2) file a complaint or information if the circumstances dictate; and (3) cooperate with the prosecution when charges are brought against a suspect. The waiver of immunity for breach of this duty has been found in the context of failure to protect cases where, unlike here, personal injuries arose from crimes caused by third parties who were able to commit those crimes because of the breach.  *See, e.g., Weinstein v. City of Santa Fe, ex. rel Santa Fe Police Dept.*, 121 N.M. 646, 916 P.2d 1313 (1996); *Blea v. City of Española*, 117 N.M. at 220; *California First Bank v. State*, 111 N.M. 64, 801 P.2d 646 (1990); *Torrez v. State*, 119 N.M. 609, 894 P.2d 386 (1995); *Shear v. Bd. of County Comm'rs.*, 101 N.M. 671, 676, 687 P.2d 728, 733 (1984).  By contrast, Plaintiffs' claims for breach of duty to investigate categorize the alleged breach not as failure to protect resulting in physical injury, but as failure to investigate in a manner satisfactory to Plaintiffs and resulting in emotional upset. There was no clearly established right for Plaintiffs to be free from this type of harm.  While not unsympathetic to Plaintiffs' frustration with the lack of progression of the investigation, and the fact that the crimes apparently remain unsolved, this Court cannot recognize a waiver of immunity where New Mexico law has not.

**IV.     Conclusion**

In summary, each claim in Plaintiffs' Complaint must be dismissed on grounds of either immunity, failure to state a claim pursuant to Rule 12(b)(6), or both.  Specifically, Defendants Valdez, Guillen, Trujillo and Lopez, in their individual capacities, are entitled to qualified

9

immunity on Count I of Plaintiffs' Complaint because it fails to state a claim for violation of Ms. Garcia's right to equal protection.  Similarly, Plaintiffs' Count I fails to state an official capacity § 1983 claim against any Española Defendant for want of sufficient, asserted facts in support a gender-based equal protection violation.  For the same reasons Plaintiffs have failed to state a viable equal protection claim under the United States Constitution, so, too, they have failed to state a viable claim under the New Mexico Constitution in Count II.  Additionally, Plaintiffs' claim for New Mexico Constitutional claims arising out of Article II, Section 4 must fail for lack of waiver of immunity for such claims under the New Mexico Tort Claims Act.  Additionally, the facts alleged by Plaintiffs in support of Count III are insufficient to state a claim against any Defendant in light of existing New Mexico case law interpreting statutory duty to investigate.  Finally, because no individual Defendant violated Plaintiffs' rights, there can be no liability on the part of the City of Española or the Española Police Department.  Accordingly, Plaintiffs' Complaint is dismissed in its entirety.

WHEREFORE,

**IT IS ORDERED** that *Defendant Valdez's Motion to Dismiss Plaintiffs' Complaint*, filed September 25, 2006 (*Doc. 19*) is GRANTED.

**IT IF FURTHER ORDERED** that *The Espanola Defendants' Motion to Dismiss Plaintiffs' Complaint*, filed November 28, 2006 (*Doc. 39*) is GRANTED.

Dated this 10th day of April, 2007.

s/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

    Susan G. Chappell, Esq.
    Sutin, Thayer, & Browne, P.C.
    Albuquerque, New Mexico

Attorney for Defendant Valdez:

    Mark A. Basham, Esq.
    Basham & Basham, P.C.
    Santa Fe, New Mexico

Attorneys for Española Defendants:

    Lisa C. Ortega, Esq.
    Christopher M. Wolpert, Esq.
    Rodey, Dickason, Sloan, Akin & Robb, P.A.
    Albuquerque, New Mexico